# RICHARDS, LAYTON & FINGER

A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

PAUL N. HEATH

DIRECT DIAL NUMBER
302-651-7590
HEATH@RLF.COM

November 21, 2006

**VIA HAND DELIVERY**

The Honorable Kent A. Jordan
United States District Court
for the District of Delaware
844 N. King Street, Room 6325
Lockbox 10
Wilmington, DE 19801

Re:   **In re Radnor Holdings Corporation, et al.
Case No. 06-10894 (PJW); C.A. No. 06-CV-00702 (KAJ)**

Dear Judge Jordan:

      On November 20, 2006, the Official Committee of Unsecured Creditors in the above-referenced bankruptcy cases filed an emergency motion for stay pending appeal in both the Bankruptcy Court and the District Court for the District of Delaware. On November 21, 2006, the Bankruptcy Court denied the Committee's Motion for Stay Pending Appeal. A copy of the Order denying the Motion is attached hereto as Exhibit A.

      A telephonic hearing on the Motion filed with the District Court is scheduled for 3:00 p.m. this afternoon. In connection with the hearing, please find attached hereto as Exhibit B a courtesy copy of the Objection of Tennenbaum Capital Partners, LLC, Special Value Opportunities Fund, LLC and Special Value Expansion Fund, LLC (collectively, "TCP") to Emergency Motion of the Official Committee of Unsecured Creditors for a Stay Pending Appeal and Correspondingly for Extension of the Bid, Auction and Sale Deadlines as Contained in the Bid Procedures Order (the "Objection"). The Objection was filed with the Bankruptcy Court on November 20, 2006 in response to the Committee's Motion for Stay Pending Appeal. TCP intends to file a similar objection in the District Court proceeding.

Respectfully,

*/s/ Paul N. Heath*

Paul N. Heath

PNH/jmw
Enclosure
cc:   Donald J. Detweiler, Esquire (by hand; w/enc.)
        Gregg M. Galardi, Esquire (by hand; w/enc.)

RLF1-3084857-1

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>RADNOR HOLDINGS CORPORATION, et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 06-10894 (PJW)<br><br>Re Docket Nos. 670 |

### ORDER DENYING EMERGENCY MOTION TO STAY PENDING APPEAL AND CORRESPONDINGLY FOR EXTENSION OF THE BID, AUCTION AND SALE DEADLINES AS CONTAINED IN THE BID PROCEDURES ORDER

Upon the Emergency Motion of the Official Committee of Unsecured Creditors to Stay Pending Appeal and Correspondingly for Extension of the Bid, Auction and Sale Deadlines as Contained in the Bid Procedures Order (the "**Motion for Stay**")

**IT IS HEREBY ORDERED THAT:**

1. The Motion for Stay is denied.

Dated: Wilmington, Delaware
November 21, 2006

_____
Peter J. Walsh
United States Bankruptcy Judge

EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RADNOR HOLDINGS CORPORATION, *et al.*, | ) | Case No. 06-10894 (PJW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF RADNOR HOLDINGS CORPORATION, *et al.*, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 06-50909 (PJW) |
| | ) | |
| TENNENBAUM CAPITAL PARTNERS, LLC; SPECIAL VALUE EXPANSION FUND, LLC; SPECIAL VALUE OPPORTUNITIES FUND, LLC; and JOSE E. FELICIANO, | ) ) ) ) | |
| | ) | Re: Docket No. 44 |
| Defendants. | ) | |

**OBJECTION OF TENNENBAUM CAPITAL PARTNERS, LLC,
SPECIAL VALUE OPPORTUNITIES FUND, LLC AND SPECIAL VALUE
EXPANSION FUND, LLC TO EMERGENCY MOTION OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR A STAY PENDING APPEAL AND
CORRESPONDINGLY FOR EXTENSION OF THE BID, AUCTION AND SALE
DEADLINES AS CONTAINED IN THE BID PROCEDURES ORDER**

Tennenbaum Capital Partners, LLC, Special Value Opportunities Fund, LLC and Special Value Expansion Fund LLC (collectively, the "TCP Lenders"), hereby object the Emergency Motion of the Official Committee of Unsecured Creditors (the "Committee") for a Stay Pending Appeal and Correspondingly for Extension of the Bid, Auction and Sale Deadlines as Contained in the Bid Procedures Order (the "Motion"). In support of this objection, the TCP Lenders respectfully represent as follows.

**Preliminary Statement**

1.    The Committee's Motion places these bankruptcy cases on the precipice of disaster. An auction for the sale of substantially all of the Debtors' assets was held on

RLF1-3082343-2

11/21/06
#47

November 20, 2006 (the "Auction"). At the Auction, the Debtors declared the stalking-horse credit bid of the TCP Lenders to be the winning bid. If the sale hearing and sale closing are stayed, the winning stalking-horse bid will terminate and the Debtors' ability to access funds under their post-petition financing agreement will cease. In short, the entry of an order staying the sale process, even temporarily, risks the complete destruction of the Debtors' going concern value and the loss of up to 1,600 jobs. The Committee represents a constituency that is out of the money in these bankruptcy cases and, therefore, is not concerned with the risks attendant with a stay. Conversely, the Debtors, their employees, other creditor constituencies and the public stand to suffer significant and irreparable harm if the stay is granted.

2. On November 16, 2006, after eight full days of trial and review and consideration of hundreds of exhibits and post-trial briefing, this Court issued its ruling finding that the ten remaining causes of action set forth in the Committee's Complaint were without merit.[1] Dismissing this Court's extensive findings of fact and analysis of law, the Committee, in a last ditch effort to derail the sale, asks this Court to grant a Motion that is patently groundless and extremely dangerous. The Motion asserts no genuine basis to conclude that this Court's findings of fact were clearly erroneous or that this Court misapplied or did not follow controlling law. In short, the Committee has no basis for concluding that it is likely to succeed on the merits on appeal.

3. Issuing a stay will inevitably cause a free-fall liquidation of the Debtors' assets that will be disastrous to the Debtors, their creditors, their 1,600 employees and the public. On the other hand, denying the Motion and allowing the Debtors to proceed with the sale following an exhaustive sale process and eight full trial days on the merits of the TCP Lenders'

---

[1] Following completion of the trial and prior to the Court's ruling, the Committee voluntarily withdrew six counts of the Complaint.

2

claims will maximize recoveries for the Debtors' creditors and preserve 1,600 jobs. For all these reasons, the Motion must be denied.

### Argument

I. **THE COMMITTEE CANNOT SATISFY THE STRINGENT REQUIREMENTS NECESSARY TO OBTAIN A STAY PENDING APPEAL**

4.  A party seeking a stay pending appeal carries a heavy burden. Evans v. Buchanan, 455 F. Supp. 705, 708 (D. Del. 1978). The following factors are considered when a court is requested to stay an order pending an appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Republic of the Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991) (emphasis added) (citing Hilton v. Braunskill, 481 U.S. 770, 776 (1987)); see also In re: Trans World Airlines, Inc., Case No. 01-0056 (PJW), slip op. at 3-4 (Bankr. D. Del. Mar. 16, 2001); In re: Delaware & Hudson Ry. Co., 90 B.R. 90, 91 (Bankr. D. Del. 1988). The four part test is conjunctive, so the Committee must prove all four of these factors to obtain a stay. See, e.g., In re: Blackwell, 162 B.R. 117, 119 (E.D. Pa. 1993); In re: Charles & Lillian Brown's Hotel, Inc., 93 B.R. 49, 53 (Bankr. S.D.N.Y. 1988); In re: Crescenzi, 58 B.R. 141, 143 (Bankr. S.D.N.Y. 1986). Moreover, where as here, the party seeking a stay cannot establish the first factor – a strong showing of a likelihood of success on the merits – this Court need not even consider the remaining factors. In re Forty-Eight Insulations, Inc., 115 F.3d 1294, 1304 (7th Cir. 1997).

A. **The Committee Cannot Demonstrate A Strong Likelihood That They Will Prevail On The Merits.**

5.  To prevail on its appeal, the Committee must carry the heavy burden of demonstrating that the Court's factual findings were clearly erroneous and that it misapplied or

3

failed to consider controlling law. See In re Top Grade Sausage, Inc., 227 F.3d 123, 125 (3d Cir. 2000) ("[W]e review the Bankruptcy Court's legal determinations de novo, its factual findings for clear error, and its exercise of discretion for abuse thereof"); see also In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989). As set forth below, the Committee has no ability to satisfy this high standard and to prevail on the merits of this appeal.

6. In support of its flailing attempt to give this Court some basis for granting the relief requested, the Committee misconstrues the Court's Findings of Fact and Conclusions of Law.[2] For example, the Committee argues that the Court misapplied the equitable doctrine of acquiescence. But this is merely one of *several* grounds upon which the Court dismissed the Committee's equitable subordination and breach of fiduciary duty claims. Indeed, even a cursory review of the Court's ruling reveals that the Court did not rely exclusively on acquiescence in dismissing those claims. In fact, the Court prefaces its discussion of acquiescence with the statement that "*[i]n addition to* holding that the Committee has failed to prove its case-in-chief on [the equitable subordination and breach of fiduciary duty counts], I conclude that the Committee's claims are barred by the equitable defense of acquiescence..." (emphasis added). FOF at page 41, ¶ 41. Clearly the Court's decision on these counts did not rest solely on acquiescence, but rather was an "in addition to" ruling. Even if the Committee is correct (which it is not) that the Court misapplied the equitable defense of acquiescence, the Motion does not address the Court's other, and original, bases for dismissing the equitable subordination and breach of fiduciary duty claims. The TCP Lenders can only assume that the

---

[2] References to the Court's Findings of Fact and Conclusions of Law are designated FOF at ¶ --. The Committee appears to suggest that the Court somehow erred by simply "adopting" the TCP Lenders' proposed findings of fact and conclusions of law without proper diligence or consideration. See Motion at page 14, footnote 24. To the extent the Committee makes this suggestion, we emphasize that the Court expressly revised and supplemented the TCP Lenders' findings based on its "115 pages" of notes taken during the trial (Tr at page 4, line 4) Furthermore, the Court submitted Amended Findings of Fact and Conclusions of Law the following day, November 17, 2006

Committee failed to make this argument in its Motion because the Committee had no basis for doing so.

7.  Additionally, the Committee asserts that this Court's finding that the TCP Lenders were not insiders resulted in the application of the wrong burden of proof to the Committee's claims. Specifically, the Committee argues that the TCP Lenders were insiders and, therefore, the TCP Lenders conduct should be subject to more rigorous scrutiny. Once again, the Committee misconstrues, or simply ignores, the express ruling of the Court. Significantly, the Court rejected the Committee's claims based on a consideration of the standards applicable *both* to insiders *and* non-insiders.

8.  The Court's ruling is unambiguous: "[e]ven were TCP's conduct viewed under the more stringent standards applied to insiders" the Court would still hold that the Committee failed "to prove that TCP engaged in wrongful conduct such as (a) fraud, illegal conduct or a breach of fiduciary duty; (b) undercapitalization; and (c) use of the Debtor as a mere instrumentality or alter ego." FOF at page 30, ¶ 15. As a result, even applying a strict scrutiny standard, the Court found explicitly that the Committee's equitable subordination claim was without merit. This finding renders the Committee's argument regarding the TCP Lenders alleged "insider" status completely irrelevant.

9.  Next, the Committee asserts that the Court's improper exclusion of the Rock expert report and testimony provides a "likely basis for reversal on appeal." The Committee's Motion fails to note, however, that the substance of the Rock report (which the Court concluded was nothing more than improper and inadmissible legal conclusion) was presented to the Court in the Committee's papers and as part of the Committee's legal arguments. Accordingly, it is apparent that the Court considered the substance of the legal conclusions contained in the Rock report as part of its deliberation in this matter.

10. Finally, the Committee asserts that the Court failed to consider the impact of the "zone of insolvency" on Mr. Feliciano's duty of loyalty as a director. Specifically, the Committee asserts that Mr. Feliciano used information he obtained as a director to negotiate the Tranche C Loan for the benefit of the TCP Lenders and that such loan further depleted the Debtors' assets and harmed unsecured creditors.

11. The Court's ruling addresses this issue squarely. The Court found that at the time the Tranche C Loan was made the Debtors represented that they were solvent (FOF at page 13, ¶ 32); that the Radnor board believed that the Tranche C Loan was in the best interest of the company and was needed to address a short-term liquidity need (FOF at page 14, ¶ 34); that Mr. Feliciano abstained from voting on the Tranche C transaction (FOF at page 14, ¶ 35); and that the Debtors' creditors were not harmed by the Tranche C Loan, but rather benefited from it (FOF at page 14, ¶ 36). The Court's findings make it clear that the Tranche C Loan benefited the Debtors and their creditors and, therefore, is insulated from attack as a breach of the duty of loyalty. Far from being a "likely basis for reversal on appeal," as the Committee suggests, it is extremely *unlikely* that this finding, supported in large part by the Court's consideration of conflicting testimony and the credibility of witnesses, will be found to have been "clearly erroneous."

B. **The TCP Lenders, The Debtors, Other Creditors And The Public Would Be Irreparably Harmed By The Imposition Of A Stay, Whereas The Committee Will Not Suffer Irreparable Harm In The Absence Of A Stay**

12. The Committee claims that it will be irreparably harmed if a stay is not entered because the sale will close and unsecured creditors will recover nothing as a result of the asset sale. This is a case of misery desperately desiring company. The Committee's constituency is unlikely to receive a recovery in these cases. The absence of a distribution, however, is not the result of nefarious activity but rather the bottom line economic realities of

6

these cases. The Committee is content to gamble with the potential loss of value attendant with a stay because its recovery is not impacted.

13.  All other parties in interest, however, including the TCP Lenders, the Debtors, other creditor constituencies, the Debtors' employees and the public all stand to suffer significant and irreparable harm if the stay is granted. The proposed sale is the only avenue to secure the going concern value of the Debtors' business. If the stay is granted, the stalking-horse bid will terminate, the Debtors' will no longer have access to funds under their post-petition financing facility and the Debtors' will not be able to continue operations. If the Debtors cease to operate, nearly 1,600 jobs will be lost. The balance of harms clearly weighs in favor of denying the Committee's request for a stay pending appeal.

## II. THE POSTING OF A SUPERSEDEAS BOND IS NECESSARY TO PROTECT ALL PARTIES IN INTEREST FROM THE HARM THAT WILL ENSUE IF A STAY PENDING APPEAL IS GRANTED

14.  Rule 8005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides, that

> [a] motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. . . . the bankruptcy judge may . . . make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge.

Fed. R. Bankr. P. 8005. Rule 62 of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rule 7062 further provides that

> [w]hen an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of

7

appeal or of procuring the order allowing the appeal, as the case may be.
The stay is effective when the supersedeas bond is approved by the court.

See Fed. R. Bankr. P. 7062; Fed. R. Civ. P. 62(d); see also Official Comm. of Unsecured Creditors v. Columbia Gas System, Inc. (In re Columbia Gas Systems, Inc.), No. 92-127-SLR, 1992 U.S. Dist. LEXIS 3253, *3 (D. Del. March 10, 1992) (acknowledging that a party moving for stay pending appeal must post a supersedeas bond under Federal Rule 62(d)).

15. "The purpose of [Bankruptcy] Rule 8005 is to project the adverse party from potential losses resulting from the stay." See United Merchant's and Manufacturer's Inc., 138 B.R. 426, 430 (D. Del. 1992). Such protection is not limited to a loss resulting from a diminution in value, but is instead intended to protect the prevailing party from *any* loss that might be sustained as a result of a stay pending appeal. See In Sphere Holding Corp., 162 B.R. 639, 644 (E.D.N.Y. 1994). Thus, a Bankruptcy Court is permitted to grant relief "upon such terms as will protect the rights of all parties in interest." In Theater Holding Corp., 22 B.R. 884, 885 (Bankr. S.D.N.Y. 1982); see also United Merchant's, 138 B.R. at 430 (it is within the discretion of the court to condition a stay pending appeal upon the posting of a bond).

16. The Committee alleges that it is only asking for a "modest" stay and that as a result, neither the TCP Lenders, the Debtors, their business operations or any other creditor constituency will be harmed by the stay. As set forth above, nothing could be further from the truth. If the sale hearing and sale closing are stayed, the winning stalking-horse bid will terminate and the Debtors' ability to access funds under their post-petition financing agreement will cease. Without access to post-petition financing, the Debtors' will be forced to cease operations and shut down their plant, laying off nearly 1,600 employees in the process. Simply put, the Committee cannot be permitted to stay the sale hearing and sale closing without providing economic protection for the catastrophic harm that may result from such stay.

17.     The Debtors estimated the value of the TCP Lenders' bid to be $224 million. Four M estimated the value of its bid to be $250 million. The TCP Lenders believe that the estimated values of the respective bids are instructive and should guide the Court in establishing a reasonable estimate of the potential damages to be suffered in the event a stay pending appeal is granted. Accordingly, the TCP Lenders request that this Court require the Committee to post a bond in the full amount of the estimated value of their bid, $224 million.

WHEREFORE, the TCP Lenders request that the Court enter an order denying the Motion and granting such other and further relief as deemed necessary.

Dated: November 20, 2006
       Wilmington, Delaware

/s/ Paul N. Heath

Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Paul N. Heath (No. 3704)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

Gregory A. Bray
Fred Neufeld
Kenneth A. Ostrow
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone:  (213) 892-4000
Facsimile:  (213) 629-5063

Attorneys for Tennenbaum Capital Partners, LLC, Special Value Opportunities Fund, LLC and Special Value Expansion Fund LLC

9

## File an answer to a motion:

06-50909-PJW The Official Committee of Unsecured Creditors of R v. Tennenbaum Capital Partners, LLC et al

Type: ap
Judge: PJW
Office: 1 (Delaware)
Case Flag: ANSDue, APPEAL
Lead Case: 06-10894-PJW

## U.S. Bankruptcy Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Heath, Paul Noble entered on 11/21/2006 at 0:33 AM EST and filed on 11/21/2006

**Case Name:** The Official Committee of Unsecured Creditors of R v. Tennenbaum Capital Partners, LLC et al
**Case Number:** 06-50909-PJW
**Document Number:** 47

**Docket Text:**
Objection to *Emergency Motion of the Official Committee of Unsecured Creditors for a Stay Pending Appeal and Correspondingly for Extension of the Bid, Auction and Sale Deadlines as Contained in the Bid Procedures Order* (related document(s)[44] ) Filed by Special Value Expansion Fund, LLC, Special Value Opportunities Fund, LLC, Tennenbaum Capital Partners, LLC (Heath, Paul)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** W:\AJ\Radnor 11-21-06 Objection.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=11/21/2006] [FileNumber=5313993-0
] [61afb8da389f3208da4a9be5565cb8ee190644d3b3f7b820eeefbbf60088c43966a
3ec83a8894d793c244fd329ec97a0510f534a794df2baed2cde45e57ddb03]]

**06-50909-PJW Notice will be electronically mailed to:**

Mark D. Collins    collins@RLF.com, rbgroup@rlf.com

Victoria Watson Counihan    bankruptcydel@gtlaw.com, thomase@gtlaw.com

Mark L. Desgrosseilliers    mdesgros@skadden.com, debank@skadden.com;clano@skadden.com;ithrashe@skadden.com,cheaney@skadden.com;vskinner@skadden.com

Donald J. Detweiler    bankruptcydel@gtlaw.com, detweilerd@gtlaw.com

Paul N. Heath    RBGroup@rlf.com

Paul Noble Heath    heath@rlf.com, Jerominski@rlf.com;RBGroup@rlf.com

Mark A. Kurtz    kurtz@rlf.com, rbgroup@rlf.com